UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCKY TORRES,

Plaintiff,

v. CASE NO.: 8:16-cv-2640-T-23AAS

MIKE WELLS, et al.,

Defendants.
____________________________________/

**ORDER**

Rocky Torres has not paid his property tax. Pasco County, Florida, has moved against Torres's property in an effort to collect the delinquent tax. Desperate to stop the county and to keep his property, Torres has launched a federal action. Torres's theory is that, at least in this instance, the county's appraisal of real estate and the imposition, levy, and enforcement of ad valorem taxes by the county and the state violate several federal criminal statutes and that the governor, the attorney general, the sheriff, the property appraiser, the tax collector, and others have conspired athwart federal law to capture Torres's property.

Torres's initial complaint (Doc. 1) comprises eight pages (but two or so pages, containing four claims and about twenty paragraphs of allegations, are missing from the docketed complaint) plus sixty-eight pages of exhibits. The initial complaint purports to allege seven claims for relief. Submitted along with an eleven-page

"lexicon" (Doc. 2-1) that defines terms appearing in the complaint, a "memorandum of law" (Doc. 2) of thirty-five pages accompanies the initial complaint (the lexicon and the memorandum of law respond to nothing in particular and illuminate nothing detectable).

The complaint seems to arise from a dispute about the ad valorem taxation of the plaintiff's putative residence (a dispute including, perhaps, the "commercial" rather than "non-commercial" classification of the property), the plaintiff's failure to pay the taxes on the property as classified, the county's declaration of a tax delinquency, and the county's announcing the property's eligibility for issuance of a tax deed. The defendants named in the initial complaint are:

- Rick Scott, Governor of Florida
- Pam Bondi, Attorney General of Florida
- Leon M. Begalski, Director of the Florida Department of Revenue
- Chris Nocco, Sheriff of Pasco County, Florida
- Mike Fasano, Tax Collector of Pasco County, Florida
- Mike Wells, Property Appraiser of Pasco County, Florida

The amended complaint (Doc. 57, which appears on the docket — inexplicably — between Doc. 27 and Doc. 28) comprises eighteen pages and purports to state fourteen claims for relief. The defendants are the same as in the initial complaint, but all the pages of the amended complaint appear on the docket. As denominated by the plaintiff, the counts are (1) "interstate and foreign travel or

transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952, (2) solicitation or use of a gift under 18 U.S.C. § 663, (3) mailing a threatening communication under 18 U.S.C. § 876, (4) receiving the proceeds of an extortion under 18 U.S.C. § 880, (5) fraud and swindles under 18 U.S.C. § 1341, (6) conversion, and (7 through 14) Racketeer-Influenced and Corrupt Organizations under 18 U.S.C. § 1962(d).

Apropos the allegation of so many criminal violations, the complaint seeks discovery, the presentation of evidence to a grand jury, a grand jury investigation, appointment of a prosecutor and "other relief . . . reasonably just under the circumstances." (Doc. 57 at 19) Needless to say, the complaint was dismissed. The order of dismissal (Doc. 53) warns Torres about the requirements of pleading a civil claim for relief and prominently warns Torres:

> Although Torres almost certainly can allege no claim against Nocco, Biegalski, Bondi, or Scott, and probably can allege no federal claim against Wells or Fasano, no later than NOVEMBER 15, 2016, Torres may amend the complaint. However, in preparing the amended complaint Torres must comply with Rules 8, 9, 10, and 12, Federal Rules of Civil Procedure and the Local Rules. . . . Torres is warned that litigation in federal court is difficult. Torres's complaint is mostly incomprehensible and suffers from acute deficiencies that suggest Torres requires legal advice and assistance from a member of The Florida Bar. The court cannot assist a party, even a *pro se* party, in conducting a case. Therefore, Torres is strongly advised to consult a member of The Florida Bar. A protracted series of futile amendments is impermissible. The need to preserve public resources requires that Torres face dismissal with prejudice or remand if the next complaint fails to state a claim.

Torres again amends the complaint. (Doc. 59) The new complaint (styled a "1st" amended complaint but actually a second amended complaint) attempts to allege fourteen claims in thirty-six pages, plus eighteen exhibits (seventy–three pages in total). Again, the "facts" section of the second amended complaint alleges that "24706 Volterra Court in Lutz, Florida, ha[s] been re-classified without permission" (Doc 59 at 4, ¶ 12), that Torres owes "delinquent taxes," and that the property is "eligible for a tax deed." The allegations are confusing, but apparently the issue that motivates Torres to sue in the district court is whether the use of the property on Volterra Court in Lutz is "commercial" or "non-commercial."

Torres's essential belief — to the extent ascertainable from the allegations of the second amended complaint — is that the governor, the attorney general, the director of the Department of Revenue, the Sheriff, the Tax Collector, the Property Appraiser, and others have conspired unlawfully to classify his residence as non-commercial and to deprive him of his property through the imposition and enforcement of the ad valorem tax. Torres offers nothing, convincing or otherwise, to explain why Governor Scott and the others allegedly have conspired against him (especially when they have so much else to do and so many others with whom to contend).

Again, as denominated by Torres, the counts in the second amended complaint are (1) deprivation of rights under 42 U.S.C. § 1983, (2) solicitation or use of a gift under 18 U.S.C. § 663, (3) mailing a threatening communication under

18 U.S.C. § 876, (4) fraud and swindles under 18 U.S.C. § 1341, (5) conversion, (6 through 12) claims of racketeering under 18 U.S.C. § 1962(d), (13) receiving the proceeds of an extortion under 18 U.S.C. § 880, and (14) "break" of fiduciary duty. Each of these claims arises from the ad valorem taxation of Torres's property on Volterra Court in Lutz.

The "relief sought" (Doc. 59 at 33–34) is memorable. First, Torres asks for "notice" of certain case law, including *Hishon v. King & Spaulding*, 104 S. Ct. 2229 (1984), and other Supreme Court precedent. Going on, Torres requests "extensive discovery," a declaration of Torres's "natural rights"; convening of a grand jury; an opportunity to present evidence to the grand jury; mandamus to compel some federal officer to perform a duty owed to Torres; appointment of a "prosecutor or independent counsel"; leave to amend the second amended complaint after completion of discovery; "not to allow the defendants to hide their criminal behavior behind a Congressional legislation"; judicial notice of *Direct Marketing Association v. Brohl*, 135 S. Ct. 1124 (2015); a declaration that the Tax Injunction Act is unconstitutional; and an award of compensatory and punitive damages, along with other "reasonably just" relief.

The defendants again move (Docs. 63, 64, 66, and 68) to dismiss.

**Count 1**

42 U.S.C. § 1983 authorizes an injured party to assert a claim for relief against a person who, acting under color of state law, violates the injured party's federally

protected right. To state a claim for relief the plaintiff must sufficiently plead the deprivation of a federal right. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Torres asserts that "the defendants are in direct violation of the constitution and laws of the United States and . . . [the] states for violating the natural rights of the plaintiff" (Doc. 59 at 11, ¶ 61). Torres's prayer for relief states "[t]he Fourteenth Amendment procedural due process protections apply only to an individual deprived of a recognized property or liberty interest." (Doc. 59 at 33)

Torres is unable to maintain a procedural due process claim under Section 1983. He "has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994). Because "Florida circuit courts, on certiorari review, possess broad powers of review . . . [the] state remedy is adequate." *McKinney*, 20 F.3d at 1563. Under Section 194.171, Florida Statutes, judicial review of an ad valorem tax assessment is available to an aggrieved taxpayer. *Osceola v. Florida Dept. of Revenue*, 893 F.2d 1231, 1233 (11th Cir. 1990), holds that "Florida provides [taxpayers] a 'plain, speedy and efficient remedy.' The Florida constitution grants to the state's circuit courts jurisdiction to hear challenges to any state tax . . . . Florida courts are also given power to issue declaratory and injunctive relief in tax cases . . . this circuit has held that the Florida tax remedies are 'plain, adequate, and complete.'"

**Counts 2, 3, 4, 13**

Torres alleges a violation of several criminal statutes. However, he lacks standing to "prosecute" purported criminal activity. Prosecution of criminal activity is within the province of the United States Attorney.

**Counts 6, 7, 8, 9, 10, 11, 12**

Counts 6 through 12 attempt to allege civil violations of RICO. To support a claim for a RICO conspiracy, a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004). A plaintiff must allege "that each defendant has *agreed* to participate in the conduct of an enterprise's illegal activities." *See Solomon v. Blue Cross & Blue Shield Ass'n,* 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (Moreon, J.) Allegations that are "merely conclusory and unsupported by any factual allegations" fail to state a RICO conspiracy. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997).

To state a claim for a RICO violation, a plaintiff must allege "(1) [a] violation of Section 1962; (2) injury to business or property; and (3) that the violation caused the injury.'" *O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989). A violation of Section 1962 consists of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir.2006). A pattern of racketeering activity exists when "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate

acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson*, 372 F.3d at 1264.

If the alleged predicate act is mail fraud or wire fraud, the plaintiff must show that "(1) the defendant intentionally participated in a scheme to defraud another of money or property, (2) the defendant used the mails or wires in furtherance of that scheme, and (3) the plaintiff relied to his detriment on the defendant's misrepresentations." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359 (11th Cir.2004).

Pleading fraud with particularity and specificity under Rule 9(b) requires allegations of (1) the precise misrepresentation; (2) the time, place, and manner of the misrepresentation; (3) the person who uttered — or was responsible for uttering — the misrepresentation; (4) the reason these misrepresentations misled the plaintiff; and (5) the wrongful gain to the defendant or the injury to the plaintiff as a result of the fraud. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997).

**(I) Count 6**

Torres pleads that "defendants" committed predicate acts of mail fraud, extortion, obstruction of justice, and wire fraud. (Doc. 59, ¶ 157–159, 168, 172) Count 6 fails to allege qualifying acts and, therefore, necessarily fails to identify the person who took each pertinent action. Also, Torres fails to allege with particularity

(or otherwise) the circumstances constituting fraud and fails to allege when or how each defendant agreed to participate in the alleged RICO conspiracy.

**(II) Counts 7 through 12**

Counts 7 through 12 mirror the allegations in Count 6. In each count Torres repeats the claim — merely conclusory and wholly unsupported by allegations of fact — that the "defendant . . . is a person . . . operating or managing an association-in-fact enterprise consisting of the other defendants . . . . Defendant . . . has an association-in-fact enterprise consisting of the other defendants' offices for the purpose of extorting plaintiff through threats of taking his shelter."

Torres insufficiently pleads a violation of Section 1962, which requires a plaintiff to allege a pattern of racketeering activity. Torres utterly fails to allege facts demonstrating that a defendant extorted anyone or obstructed justice. Obviously, the attempt to allege mail fraud and wire fraud fails by a wide margin to comply with the heightened pleading requirements of Rule 9(b). Torres fails under Rule 12(b)(6) to state a claim.

**Counts 5, 14 (state law claims for conversion and "break" of fiduciary duty)**

Torres attempts to allege two state law claims. Neither attempt succeeds, but the failure is inconsequential. Because Torres's complaint states no "federal question" and because diversity jurisdiction is unavailable (the plaintiff and the removal defendants are Floridians), the maintenance of state law claims in this action depends on the exercise of supplemental jurisdiction, which is discretionary. In this

instance, supplemental jurisdiction is declined. "[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984).[*]

**CONCLUSION**

Torres objects to the ad valorem taxation of his home, but he has not exhausted (or, perhaps, even pursued) his state remedies, a full array of which Florida offers to an aggrieved ad valorem taxpayer. Torres's attempt to characterize Florida's statutory system of ad valorem taxation as a crime and as a RICO conspiracy and to characterize as RICO conspirators the state and county officials implementing Florida's statutes is, at least, acutely implausible, if not wholly preposterous and, in all events, not adequately pleaded. Torres's effort to state a federal claim is futile. The motions (Docs. 63, 64, 66, 68) to dismiss are **GRANTED**. Counts 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, and 13 are **DISMISSED WITH**

[*] "[T]he federal court should decline the exercise of jurisdiction" if federal-law claims are dismissed in a lawsuit's early stages and only state-law claims remain. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *Kelly v. Alabama Dept. of Revenue*, 638 Fed.Appx. 884, 892 (11th. Cir 2016) (per curiam).

**PREJUDICE**. Supplemental jurisdiction over counts 5 and 14 is **DECLINED**. The action is **DISMISSED**. The clerk is directed to close the case.

ORDERED in Tampa, Florida, on January 30, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE